BRIDGET O'BRIEN *vs.* BROTHERHOOD OF THE UNION.

Third Judicial District, New Haven, June Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, JS.

The rules of a fraternal order provided that the death-benefits of a member dying from certain specified diseases, within 183 days from the date of his admission, should be $5, and in all other cases $500 ; that members might be expelled for nonpayment of dues, in which case they forfeited all right and interest in the benefit-fund; and that no member expelled should be reinstated except upon making the regular, formal application required of new members. *Held :* —

1. That the contract of admission involved an agreement upon the

O'Brien v. Brotherhood of the Union.

part of the candidate to pay the prescribed dues, and to accept the rules of the order governing the administration of the benefit-fund and the expulsion and reinstatement of members ; and upon the part of the order, to pay the specified death-benefits.

2. That the same contract arose whenever a former member was reinstated after expulsion.

3. That the failure of the order to observe its own rules in expelling one of its members became of no practical importance in the present instance, inasmuch as it appeared that the expelled member had elected to treat the action taken as effective, and had been exempted from the payment of dues for a least two months prior to his application for reinstatement.

4. That the reinstated member having died from one of the specified diseases within 183 days after his reinstatement, his beneficiary was entitled to a death-benefit of $5 only.

Argued June 2d—decided July 24th, 1903.

ACTION against a fraternal society to recover death-benefits, brought to the Court of Common Pleas in Fairfield County and tried to the court, *Curtis, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *Error and judgment reversed.*

*John J. Phelan,* for the appellant (defendant).

*Thomas M. Cullinan,* for the appellee (plaintiff).

HAMERSLEY, J. The plaintiff seeks to recover the sum of $500 claimed to be due her by force of a contract between the defendant association and its dead member, one Daniel P. Conklin. The defendant is a secret fraternal society or order, organized under the laws of Pennsylvania. The contract in question is the one which arose between the defendant and Conklin upon his becoming a beneficial member of the order, and its nature is determined by the following facts which appear from the finding of the trial court, including the laws, forms, and rules of the defendant, made a part of the record : —

The order is governed by an organization called the supreme circle. Membership is acquired through local circles subject, in States where, as appears to be the case in this

State, no grand body exists, to the direct jurisdiction of the supreme circle. The supreme circle administers a fund called "The Funeral Benefit Fund of the Supreme Circle." Each member of this fund complying with the rules of the order is entitled at his death to the payment of a death benefit. The amount of this benefit is determined by § 15 of Art. XVI of the laws of the supreme circle, as follows: "The death benefit of a member of this Fund dying within 183 days from date of admission, with nephritis (Bright's Disease), phthisis, phthisis pulmonalis (consumption), or valvular disease of the heart, shall be five dollars and no more. In all other cases it shall be five hundred dollars." No one can be admitted as a beneficial member of the order unless he is " in sound bodily health, and between the ages of 18 and 45 years." Any person duly admitted by initiation, reinstatement or admission by card, as a beneficial member in a local circle, shall thereby become a member of the funeral benefit fund of the supreme circle. The candidate for admission in the local circle must make written application upon the application-blank for admission into the funeral benefit fund, acknowledging his familiarity with § 15 of Art. XVI of the supreme laws, and accepting membership in the fund on these conditions; and before admission must execute an agreement with the supreme circle upon the registration-blank, whereby he again acknowledges his familiarity with § 15 and his acceptance of membership in the fund on these conditions. The only contribution to the fund required of members is the payment of 50 cents a month, or, under certain conditions, of 60 cents a month. Members may be expelled for nonpayment of the monthly dues, and for various causes set forth in the laws. A member suspended or expelled from membership in a local circle, for any cause, shall forfeit membership in the fund. No member expelled from the fund shall be again admitted or reinstated, without again making application on the application-blank and executing the agreement on the registration-blank. The officer of the supreme circle, called the supreme scroll keeper, keeps the register of the members of the funeral benefit

fund, recording their admission, expulsion and reinstatement. The officer of the local circle, called the Hon. scroll keeper, certifies to the supreme scroll keeper, from the records of the circle, the admission of members and their suspension or expulsion. When a member is registered by the supreme scroll keeper, the local circle remains responsible for the monthly payment of his dues until he is expelled or suspended, and if it fails for one month to make this payment, the circle may be expelled, and all its members thereby forfeit membership in the fund. The death benefit is payable to the beneficiary named by the member in his application, or, if there is no such beneficiary, to certain relatives of the deceased, as prescribed by their rules ; or, if there are no such relatives, to the legal heirs of the deceased.

We think it clear that the contract arising upon the admission of a beneficial member involves, on the part of the defendant, an agreement to pay, upon the death of a member, to his beneficiary, the sum of $5 in case he dies from any one of the diseases named within 183 days from the date of his admission ; and in case he does not die from one of those diseases, or dies after the expiration of the 183 days, to pay to his beneficiary the sum of $500. It involves, on the part of the member, an agreement to pay his circle the monthly dues required, and his acceptance of the laws of the order relating to the administration of the funeral benefit fund and expulsion from the fund ; and the same contract arises whenever a former member is reinstated after suspension or expulsion.

It further appears that Conklin was duly entered on the register of the supreme circle as a member of the funeral benefit fund, through admission as a beneficial member of the Ferris Bishop Circle, No. 6, on February 20th, 1899 ; that he did not pay his dues for the months of July, August, September and October, 1900, as required by the laws. At a meeting of the local circle held October 15th, 1900, record was made of Conklin's suspension for nonpayment of dues. On October 29th the Hon. scroll keeper certified to the supreme scroll keeper the expulsion of Conklin for nonpayment

of dues, and on October 31st the supreme scroll keeper recorded the expulsion. On December 3d, 1900, Conklin attended a meeting of his circle, and paid his indebtedness to the circle for the funeral benefit fund dues up to the time of his expulsion, including the dues for October, which were payable on the 15th of that month, being the date of the last stated meeting for the month. Having thus made good his standing in the circle, he afterwards, on January 21st, 1901, made application for reinstatement in the funeral benefit fund, signing, as required, the application-blank, was elected to membership of the fund by the circle, executed the requisite agreement with the supreme circle upon the registration-blank, and paid the registration fee. The written application and agreement were duly forwarded to the supreme scroll keeper, and by him duly recorded February 1st, 1901, the written agreement being retained by the supreme circle as its laws .require when the admission of a member is registered. July 1st, 1901, Conklin died of phthisis pulmonalis, and proofs of his death were duly made out and presented to the supreme circle.

Upon this state of facts it is clear that the plaintiff is entitled to recover $5, and is not entitled to recover $500.

Upon the trial, the validity—under the rules of the order—of Conklin's expulsion from the funeral benefit fund was contested. In respect to this claim the court found the following facts: At the meeting of the circle held October 15th, 1900, the Hon. register called off the name of Conklin for nonpayment of assessment for the funeral benefit fund of the supreme circle, and then entered in his funeral benefit fund book of the supreme circle the suspension of Conklin on that day; the Hon. scroll keeper entered in his book at said meeting the suspension of Conklin for nonpayment of dues; no action was taken at said meeting in reference to said Conklin, by vote or otherwise, and the entries in said books were based on the action of the Hon. register.

From these facts, in connection with the other facts appearing in the finding, the court drew the conclusion that Conklin, at the time of his death, had been a member of

the funeral benefit fund for more than 183 consecutive days.

In this we think the court erred.    It was the duty of the Hon. register to keep an accurate account between the circle and each member, to notify each member monthly of his indebtedness to the funeral benefit fund, and at the end of each semi-annual term to report to the circle the names of all members liable to suspension.    It was the duty of the Hon. scroll keeper to keep an accurate record of the proceedings of the circle.    By the supreme laws, a person suspended from membership in a circle forfeits membership in the fund, unless he gives immediate notice of appeal upon receiving notice of the suspension; the suspension without appeal apparently operates as expulsion from the fund.    It was the duty of the circle to transmit to the supreme circle all expulsions as soon as the action took place, and this duty devolved on the Hon. scroll keeper, acting for the circle.    Assuming, however, that the failure to take an actual vote at the meeting of the circle rendered its action in transmitting his expulsion to the supreme circle unlawful, and that Conklin did not have immediate notice of this action, yet it clearly appears that on the following December 3d he did have notice of his suspension from the circle, and consequent expulsion from the fund, and did not appeal from this action but elected to accept it and received the benefit of exemption · from payment of dues for the succeeding months; and on the following January 21st, still retaining the benefit of non-membership during the months of November and December, applied for reinstatement in the funeral benefit fund, and entered into a written agreement with the supreme circle whereby the benefits of non-membership from the date of his expulsion to that of his reinstatement was secured to him, and the date of his admission to membership in the fund, as an expelled member reinstated, was conclusively determined as between him and the supreme circle.    Notwithstanding any failure to follow the rules of the order in the expulsion of Conklin on October 15th, he has, by his subsequent acts, severed the membership acquired by his

initiation, and acquired a new membership by his reinstatement. His right, therefore, to a death-benefit depends on the agreement he made with the supreme circle on January 21st, 1901. By that agreement the amount of the benefit is fixed at $5, in case he dies within 183 days from its date. It appears that the registration-blank upon which this agreement was executed contains an addition to the words " within 183 days from the date of admission to this fund," of the words, " or, if expelled, then from the date of reinstatement." It is immaterial whether the use of this addition was authorized or not. The words add nothing to the force of § 15 of the funeral benefit fund laws. They are merely a gloss, accurately expressing the meaning of that section.

There is no occasion to consider questions arising upon other defenses made by the defendant. Upon the facts as found by the court, the plaintiff is entitled to a judgment for $5, and is not entitled to a judgment for $500.

No question as to costs is properly presented by this appeal.

The judgment of the Court of Common Pleas is reversed. A further hearing, limited to the question of costs, may be had and judgment rendered in accordance with this opinion.

In this opinion the other judges concurred.