ALBERT ROSEN *v.* BROTHERHOOD OF PAINTERS, DECO-
RATORS AND PAPERHANGERS OF AMERICA.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, JS.

Argued October 9—decided December 5, 1941.

*William M. Harney,* for the appellant (defendant).

*Nathan Aaron* and *Samuel H. Aron,* for the appellee
(plaintiff).

AVERY, J.   The plaintiff, as the designated bene-
ficiary of a deceased member, brought this action to
recover from the defendant union a death benefit to
which he claimed to be entitled from it.   The defend-
ant claimed that the deceased member had been de-
linquent in the payment of dues upon two occasions
and that, therefore, the plaintiff was not entitled to a
full benefit payment of $300 as claimed by him, but
only to $50, being so much as accrued subsequent to

the claimed delinquencies. The case was tried to the court and judgment rendered for the plaintiff for the full amount from which the defendant has appealed.

The essential facts found by the court are these: Edward A. Rosen died December 21, 1939. At the time of his death he was a member of Local Union No. 1339 of Hartford, Connecticut, which is a member of the defendant trade union, the latter having headquarters and principal offices at Lafayette, Indiana, and being composed of about thirteen hundred and fifty locals. He became a member of the Hartford local at the time of its organization, October 28, 1926, and remained a member until his decease. During his entire period of membership, the affairs of the defendant union, including all local unions, were governed by a constitution. The local unions had the power to frame bylaws for their own government not in conflict with the constitution and had the power within certain limits to establish and fix the amount or rate of membership dues. The dues were paid by the members to the local to which the member belonged and the local in turn was required to send to the defendant, at its headquarters, sixty cents per month for each member. This amount is called a per capita tax, the balance of dues paid by the members being retained by the local for its own purposes. Payments of dues by members were recorded in a membership book or "due book," the form of which was uniform throughout the union. In this book were recorded the date and amount of each payment of dues and the month or months for which they were paid, and also all suspensions and reinstatements, if any, which had occurred during the period covered. Such payments were also recorded in ledger books required to be kept by the local union. Under the provisions of the constitution the local union was required to and did send

to the general headquarters on two sets of forms a report of its financial activity during the preceding months, including the names of all the members who had paid dues during such period, the amount and date of each payment and the month or months for which such dues were paid. The report further provided for the listing of all new members initiated during the period, members transferred to and from the local union and members suspended or reinstated, and for a report of the total number of members for which the tax was paid and the total amount of such tax. The defendant union at its general headquarters maintained a system whereby a record of its entire membership was kept, including a financial record of all payments made by each member.

The defendant had in effect a system of fraternal benefit insurance providing for death and disability benefit payments to its members under certain terms and conditions, the benefits increasing with the length of membership. The constitution provided that "only members who have been paying full local dues and assessments for one year and who have been in continuous good standing for that period shall be entitled to death and disability benefits." The deceased paid the dues for January, 1938, in March, and those for February in April. He made no further payments until June 10th, when he paid the March dues. On July 22d he paid the dues for the preceding April and May. At that time, dues for April, May and June had not been paid. The per capita tax due on account of Rosen's membership for the months for which his dues remained unpaid was regularly paid by the local union out of its own funds. His subsequent payments of dues were such that at the time of his death on December 21, 1939, they had been paid for all months except November and December. The

claim of the defendant is that, because in 1938 there was a period when the dues had not been paid for a longer period than three months, he was not entitled to recover full benefits. The provisions of the constitution relating to continuous good standing are appended in the footnote.[1]

The constitution did not fix the time when dues were payable to a local union. The local union from the time of its organization fixed the rate of dues at $2 per month until 1937 when they were raised to $2.50 per month, but at no time did it set a specific period or time limit for the payment of such dues; and from the time of its organization it adopted and followed the custom and practice of requiring dues to be paid within a reasonable time, determined largely by

---

[1] Sec. 139. Any member indebted for three months' dues or an amount equal to three months' dues shall stand suspended, a vote of the local union not being required to suspend him. His membership book shall be deemed sufficient notice of arrears, and no further notice be required from the Financial Secretary. . . .

Sec. 140. The failure of the Financial Secretary to report suspension or collect reinstatement fee shall not constitute a waiver of default nor entitle a member to benefits for the period prior to such payment of arrearages; the acceptance of such arrearages by the financial secretary or any other officer of the local union from the member—or from any person on his behalf—shall not constitute or be construed as a waiver of the default of the member, nor will the acceptance of such arrearages have the effect of reinstating the member in good standing. . . .

Sec. 145. A suspended member when reinstated shall not be again placed in benefits until three months from the date of settling in full all arrearages, including dues for the month in which the payment is made, and shall then be entitled to the minimum amount as provided for in Sections 107 and 108, except that where the member is suspended for the first time during his membership in the Brotherhood and has been in continuous good standing for five years immediately prior to such suspension he shall be restored to the beneficial standing he enjoyed prior to the date of his first suspension, benefits to begin three months after the date of his reinstatement.

its financial secretary, taking into consideration the financial ability and character of the particular member. This practice was applied to the members indiscriminately, was followed on numerous occasions and continued until the death of Edward Rosen. The decedent was not reported as suspended on the monthly reports made subsequent to his payments for the months mentioned and sent to the general office of the defendant, nor was he required to make application for reinstatement or pay any reinstatement fees; and no suspension was noted either in his membership book or in the ledger books of the local, which continued to collect dues from him subsequent to these payments and up to the time of his death. The defendant has asked for corrections and additions to this finding but no correction is permissible by which the position of the defendant will be materially benefited.

The terms of the contract between Rosen and the defendant are determined by the constitution and bylaws of the defendant as existing when he became a member and as amended from time to time while he continued as such. *O'Brien* v. *Brotherhood of the Union,* 76 Conn. 52, 57, 55 Atl. 577; *Gilmore* v. *Knights of Columbus,* 77 Conn. 58, 62, 58 Atl. 223; *Masonic Mutual Benefit Association* v. *Severson,* 71 Conn. 719, 724, 43 Atl. 192; *Coughlin* v. *Knights of Columbus,* 79 Conn. 218, 220, 64 Atl. 223. "It is the time when dues become payable, not the month for which they are paid, which must determine whether a member is in arrears for more than three months' dues." *Cunningham* v. *United Association of Journeymen Plumbers,* 114 Conn. 309, 312, 158 Atl. 807. Having paid the dues within the time required by the local union, which was not contrary to any provision of the constitution of the parent union, it follows that

the plaintiff as the designated beneficiary was entitled to the benefit of $300 established for a ten-year membership. As this disposes of the case, it is unnecessary to consider whether the action of the secretary-treasurer of the grand lodge constituted a waiver of the provisions of the constitution relating to the payments of dues; and the ruling on evidence complained of, whether or not it was erroneous, could not have been harmful.

There is no error.

In this opinion the other judges concurred.