Argued January 9, decided January 20, rehearing denied February 10, 1914.

## FRAKES v. MUTUAL FIRE CO.*

### (138 Pac. 224.)

Appeal and Error—Review—Presumptions.

1. In an action on an insurance policy, though the allegation of partnership of plaintiffs was denied in the answer, where the policy, loss and adjustment thereof were admitted, and the court rules without objection or exception, that the defendant had the burden of proof, it will be presumed in the Supreme Court, in support of a finding that plaintiffs were partners, that defendant's counsel at the trial admitted that fact.

Insurance—Forfeiture—Nonpayment of Assessment—Notice.

2. Where a policy in a mutual company recites that the member has bound himself to pay assessments, and also that he has paid a fixed sum, but he has not in fact paid such sum, and the policy also sets out provisions of the constitution and by-laws of the company requiring the secretary to collect assessments and premiums, and providing that all losses shall be paid from the general fund maintained

———

*On the question of the mode of proving mailing of notice of maturity of premiums or assessments, see note in 7 L. R. A. (N. S.) 238. And as to the necessity that notice of maturity of premiums or assessments sent through the mail be received, see note in 7 L. R. A. (N. S.) 253.                                    REPORTER.

by assessments, that, if any assessment is not paid within 30 days after notice thereof is deposited in the postoffice at Portland, the policy shall be void, and that the company will issue a paid-up policy upon the payment of a sum into an advance assessment fund, if the fixed sum referred to in the policy is an advance assessment which should be paid within 30 days after notice, the mailing of the notice is a condition precedent to avoiding the policy for nonpayment.

> [As to effect of provision in mutual insurance contract for forfeiture or suspension of policy on failure to pay dues, see note in 11 Ann. Cas. 340.]

Insurance—Forfeiture—Nonpayment of Assessment—Notice.

3. Under a provision of a by-law of a mutual insurance company that, if an assessment is not paid within 30 days after notice thereof is mailed, the policy shall be void, a mere declaration of the amount due on the policy, without notice that the policy would become void if the amount was not paid within 30 days, was not sufficient.

Insurance—Forfeiture—Nonpayment of Assessment—Notice.

4. Where the by-laws of a mutual insurance company require notice of assessments to be in writing, evidence of a parol notice is immaterial.

Insurance—Forfeiture—Nonpayment of Assessment—Notice.

5. Where it might reasonably be inferred that a sum mentioned in a policy was a premium rather than an advance assessment, the policy did not give the notice required by the by-laws of the company to avoid a policy for failure to pay the assessment within a given time.

From Multnomah: HENRY E. McGINN, Judge.

Department 2.   Statement by MR. JUSTICE MOORE.

This is an action by P. A. Frakes, R. J. Frakes and L. S. Frakes, copartners doing business as L. S. Frakes Company, against the Mutual Fire Company of Portland, Oregon, to recover a proportional part of the sum specified in an insurance policy by reason of a loss by fire.   The cause being at issue was tried, and from the testimony received the court made findings of fact in substance as follows:

(1)  That March 10, 1909, the plaintiffs, P. A. Frakes, R. J. Frakes, and L. S. Frakes were and ever since have been partners as L. S. Frakes Company.

(2)  That at such time the defendant was and still is a corporation having its principal place of business in Portland, Oregon.

(3)  That on March 25, 1909, in consideration of $102.90 premium to be paid by plaintiffs to defendant,

it executed to them a policy, insuring for the term of one year against loss by fire to an amount not exceeding $7,000, being $5,500 on a stock of merchandise, and $1,500 on store furniture and fixtures, all while contained within a frame building situate at No. 409 Washington Street in that city.

(4) That the policy provided that in case of loss thereunder the sum ascertained to be due should be payable to L. S. Frakes Company.

(5) That the premium referred to was not paid when the policy was issued, and the payment thereof was deferred from time to time until after the fire hereinafter mentioned.

(6) That prior thereto the defendant requested of the plaintiffs payment of the premium, but they were not notified before the fire occurred that the policy would be canceled if the premium was not paid, though long after the loss they received a written notice from the defendant that the policy had been annulled prior to the fire, which notice denied any liability under the policy.

(7) That before bringing this action the plaintiffs offered the defendant $102.90 in full payment of the premium, but, the tender having been declined, that sum of money was left with the clerk of the court for the defendant.

(8) That by-law No. 8, adopted by the defendant company and set forth in the policy, reads: "All assessments levied must be paid within thirty days after notice thereof is deposited in the postoffice at Portland, Oregon. If such or any assessment is not paid to this company within thirty days after such notice is mailed, then the policy of insurance shall be null and void and an action or suit may be instituted for the collection of such or any assessment; the applicant agrees to pay a reasonable sum as attorney's fee in addition to the costs and disbursements for the collection of such or

any assessment that may be due.  In any suit or action the secretary's certificate under his hand and seal of office shall be deemed sufficient evidence that an assessment has been levied and the amount thereof.''

(9) That no assessment was made or notice given as required by such by-law in order to annul the policy.

(10) That, by reason of the notice denying any liability under the policy, the defendant waived notice of loss and proof thereof and also of the time of the payment of the damages sustained.

(11) That on May 22, 1909, the property described in the policy and all while contained in the building specified was injured by fire.

(12) That at the time the policy was executed and when the fire occurred the plaintiffs were the owners of the property described.

(13) That at that time they held concurrent insurance policies on the same property to the extent of $8,000.

(14) That on May 22, 1909, the defendant was duly notified of the loss, and thereupon insurance adjusters ascertained and determined the injury to the plaintiffs' property to have been $9,516.87 on the stock of merchandise, and $1,251.25 on the store fixtures and furniture.

(15) That by such adjustment it was found that the proportion of the loss covered by the defendant's policy on merchandise was $3,489.51, and on store furniture and fixtures, $625.63.

(16) That after such determination was made the proportionate amount of loss found to be due from other insurance companies to the plaintiff was paid.

(17) That the plaintiffs had duly performed all the conditions of the policy required of them.

(18) And that, although the defendant was requested to pay the loss so found to be due from it on the policy, no part thereof had been paid.

Based on such findings, the conclusion of law was deduced that the plaintiffs were entitled to recover from the defendant as their damages under the policy $4,115.14, with interest thereon from July 22, 1909. A judgment having been rendered in accordance therewith amounting to $4,934.03, and $47.93 costs and disbursements, the defendant appeals.     AFFIRMED.

For appellant there was a brief over the names of *Mr. Robert J. Upton* and *Mr. M. B. Meacham,* with an oral argument by *Mr. Upton.*

For respondents there was a brief over the names of *Messrs. Emmons & Webster,* with an oral argument by *Mr. Lionel R. Webster.*

MR. JUSTICE MOORE delivered the opinion of the court.

Exceptions duly taken to some of the findings of fact were overruled, and it is maintained by defendant's counsel that errors were thereby committed as follows: (1) In concluding that at the time stated the plaintiffs were partners. (2) In failing to find that prior to the fire notice of cancellation of the policy was given by defendant to plaintiffs. (3) In concluding that before the loss no notice was given that the policy would be canceled if the assessment was not paid. (4) And in finding that no assessment was made or notice thereof given, as required by the by-laws, in order to annul the policy.

1. Considering these assignments in the order stated, it is argued that no testimony was received tending to show that plaintiffs were partners at the time the policy was issued or when the fire occurred. It appears from the transcript that when the cause was called for trial counsel for the respective parties made statements of the facts involved, admitting that at the time of the fire the plaintiffs were the owners of the

stock of merchandise and of the store fixtures, and
were engaged in business at the place specified in the
policy. The court, addressing plaintiffs' counsel, said:
"The policy is admitted and the loss is admitted, is it
not? Do you have to prove anything else?" The
defendant's counsel thereupon remarked: "Of course
we admit they [the insurance adjusters] found there
was the amount of loss as stated" (by plaintiffs' coun-
sel). The court: "I think that I will hold that the
defendant has the burden in this case," to which ruling
no objection was made or exception taken. The plain-
tiffs' counsel thereupon stated the amount of loss as
determined by the adjusters and the proportion thereof
chargeable to the defendant as hereinbefore detailed.
The policy of insurance was then introduced in evi-
dence and the plaintiffs rested.

Though the averment in the complaint that the plain-
tiffs are partners is denied in the answer, no testimony
in support of that issue appears to have been given.
The certificate of the trial judge appended to the bill
of exceptions declares that the transcript contains a
full, true and correct statement of all the evidence
offered by either party, including the exhibits. The
attestation does not purport to give a minute statement
of the facts or the admission thereof as made by coun-
sel for the respective parties at the trial of the cause.
In the absence of such affirmative showing, it will be
presumed from the findings of fact made by the court
that the plaintiffs were and are copartners, that de-
fendant's counsel at the trial solemnly admitted the
association of the persons hereinbefore named for the
purpose of carrying on business together, thereby ren-
dering other proof to substantiate such issue unneces-
sary.

2. It is maintained by defendant's counsel that the
uncontradicted testimony conclusively shows that no-
tice of cancellation of the policy was given by defend-

ant to plaintiffs prior to the fire, and that the finding
that no such notice was given until after the loss
occurred is erroneous. The proper solution of this
question depends upon the kind of notice required by
the terms of the policy. The written agreement for
indemnity against loss by fire which was received in
evidence contains a clause as follows: "Whereas L. S.
Frakes Company in accordance with the application
which is made a part of this contract, has become a
member of the Mutual Fire Company of Portland,
Oregon (hereinafter called the Company) and bound
himself to pay his ratable proportion of all assessments
made in accordance with the 'constitution and by-laws'
and the stipulation herein named, and also the payment
of one hundred two and 90/100 dollars, the Company
does insure," etc.

A part of Article V of the Constitution of the defend-
ant company, the whole of which is printed in the
policy, prescribing the duties of officers, reads: "The
secretary shall be the recording, corresponding and
accounting officer. He shall attest all certificates and
orders, and keep a complete record of all business of
this company. He shall collect all assessments, re-
ceive all premiums, and pay the same to the treasurer
daily."

Article VIII of the Constitution, as far as material
herein, provides: "All losses, charges and expenses
shall be paid out of a fund to be known as the 'General
Fund.' This fund shall at all times be maintained by
assessments levied only by the board of directors when
in their judgment the necessity exists, and upon all the
members of the company, and shall be prorated in
accordance with the amount of their policies respec-
tively."

The policy also contains a copy of the defendant's
by-laws, Section 2 of which is as follows: "Upon the
written request of the insured, which request in con-

nection with the assurances that pertain thereto, shall be attached to the policy at the time of its issuance and become a part thereof, this company will issue a fully paid-up policy for the time agreed upon as provided by law, upon the payment of the total amount of the assessments that could or would be levied upon any given policy in accordance with the constitution and by-laws, provided, however, that such money so received, other than what was then due the company, shall not be paid into the 'General Fund,' but shall be paid into a fund known as the 'Advance Assessment Fund,' which fund shall be held by the corporation in trust, subject to the following conditions: When any assessment may become due and owing on said policy, that the said company is authorized to levy said assessment against the said insured in the ordinary and usual way, but the said assessment shall be collected only out of said advance assessment fund." In construing the language of that section, in an action wherein the complaint charged the levy of any advance assessment, and such averment was admitted by the answer which impliedly, at least, stated that the sum of money so determined upon had not been paid within 30 days after the giving of notice thereof, it was held that the policy was self-executing, and that upon default in the payment of the assessment it became *ipso facto* void: *Mutual Fire Co.* v. *Maple,* 60 Or. 359 (119 Pac. 484, 38 L. R. A. (N. S.) 726). In that case, though nothing is said in the opinion with respect to the giving of a notice of assessment, the decision proceeds upon the theory that such announcement was duly received.

It will be kept in mind that in the case at bar the policy recites that the plaintiffs had obligated themselves to pay their ratable proportion of all assessments, and that the contract of insurance also acknowledged the payment of $102.90. It would appear that

the sum so admitted was not an assessment but a premium, which amount agreed to be paid as the consideration for the insurance the secretary was authorized to receive pursuant to Article III of the Constitution. If, however, such sum was an advanced assessment within the meaning of Section 2 of defendant's by-laws, and should have been paid within 30 days after notice thereof was deposited in the postoffice at Portland, Oregon, the mailing of a notice giving such warning is a condition precedent, the performance of which must be complied with before the policy is rendered *ipso facto* void: *Schmidt* v. *German Mut. Ins. Co.,* 4 Ind. App. 340 (30 N. E. 939).

3. H. B. Wagnon, manager of the defendant, which is a mutual insurance company, testified that its board of directors had authorized the levy of advance assessments of 70 per cent of the annual premiums of old standard insurance companies whenever a policy was issued; that pursuant to such sanction a levy of that kind was made by the officers upon the plaintiffs' application for insurance; that, if the money realized by such method was insufficient to liquidate the loss occasioned by a fire covered by one of its policies, another assessment would be levied upon all persons whose requests for insurance, when granted, made them members of the company; that the information contained in a policy and a bill accompanying it, stating that the sum of money referred to should be paid within 30 days, were mailed to the plaintiffs and afforded all the written notice that was given. On cross-examination, the witness in answer to the question, "Then, it was a notice with the policy when the policy was delivered?" replied: "Sure it was, with all policies, sure; I have just been telling you we could not get along without that, we could not get any money to pay with in any other way. Q. Well, did you send out the

policy? How do you know there was a notice sent out with this policy? A. Well, I don't know whether I mailed it or my son mailed it, or the girl that wrote it—somebody mailed it out of my office, that is one sure thing. They got it at any rate; there's a sure thing—sure pop they got it, and it was sent out of the office by somebody.''

H. B. Wagnon, Jr., who is secretary of the defendant company, corroborates the preceding witness with respect to the manner of levying an advance assessment. He identified an envelope which was received in evidence having thereon, *inter alia,* the sentence: ''Policy mailed by A. S.'' In alluding to which, he testified that the letters last set forth were the initials of the stenographer in their office at the time. Referring to the notice of assessment, this witness stated upon oath: ''The policy itself so called for it, and there was a written statement mailed with the policy also.'' Adverting to the plaintiffs, he was further asked: ''And was there any statement mailed or delivered to these people afterward?'' He replied: ''It was, and in person by myself.'' The court thereupon inquired: ''What kind of a statement was it?'' The witness answered: ''Just like this one (exhibiting a paper); these have been printed since, but they are of the same nature.'' The plaintiffs' counsel then asked: ''Simply a bill, that is, a statement in the nature of a bill sent out with the policy?'' The witness replied: ''In each one; yes, sir.'' The statement of the demand thus referred to was nothing more than a mere declaration of the amount due on the policy. Whether such bill was sent out by mail or delivered in person by H. D. Wagnon, Jr., which cannot be determined from his testimony, is unimportant, for the information thus furnished was not a notice that the contract of insurance would become void if the payment was not made within 30 days.

4. Where, as in the case at bar, the by-laws require that notice of assessments must be given in writing, testimony offered to prove that a parol notice was given is immaterial: *Dial* v. *Valley Mutual Life Assn.,* 29 S. C. 560 (8 S. E. 27).

5. The stenographer who, it is asserted, mailed to the plaintiffs the policy was not called to prove that any notice of a levy of assessment was made. The secretary's certificate, under his hand and seal of office, that an assessment had been made, and the amount thereof as provided by Section 8 of the by-laws, was not offered in evidence unless the policy can be regarded as affording such proof. No notice of the levy of an assessment, directed to the plaintiffs, appears to have been deposited in the postoffice at Portland, Oregon. The testimony, however, unmistakably shows that the $102.90 referred to in the policy was an advance assessment, but, in the absence of such sworn declarations, it might reasonably have been inferred that the sum so stated was the premium, so that the policy, though signed by the secretary and tested by his seal of office, did not, in our opinion, furnish the required information, and evidently is not the notice specified in Section 8 of the by-laws.

We concur in the findings made by the trial court that are challenged by assignments of error numbered 2, 3, and 4, which specifications practically involve but one question. Other errors are alleged, but, deeming them unimportant or not involved, the judgment should be affirmed, and it is so ordered. Affirmed.

Mr. Justice Bean, Mr. Justice Eakin and Mr. Justice McNary concur. Mr. Chief Justice McBride not sitting.