MARY LEOGRANDE, PLAINTIFF-APPELLEE, v. CARPEN-
TERS' LOCAL NO. 391, AND UNITED BROTHERHOOD
OF CARPENTERS AND JOINERS OF AMERICA, DEFEND-
ANTS-APPELLANTS.

Submitted October 4, 1938—Decided December 23, 1938.

Before Justices TRENCHARD, PARKER and PERSKIE.

For the appellants, *Lawrence Wolfberg.*

For the appellee, *Cullum & Cullum* (*Paul F. Cullum,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. The determinative question we are to decide is whether plaintiff's husband was, at the time of his death, a member in good standing in defendants' union, and whether, because of that fact, plaintiff was entitled to the member's funeral donation as prescribed in the constitution and by-laws of the United Brotherhood of Carpenters and Joiners of America?

By defendants' constitution and by-laws (section 48) on the death of a member "in good standing," his wife or legal heirs, as named on his application, are entitled to the member's funeral donation.

John LeoGrande, plaintiff's husband, was a member of defendants' union, Carpenters' Local No. 391, of Hoboken, New Jersey. This local is a subordinate unit of the United Brotherhood of Carpenters and Joiners of America, which is also joined as a defendant in this suit. John LeoGrande had fallen six months in arrears in his dues; the arrearage amounted to $17.50. By reason of that arrearage he was, under defendants' constitution and by-laws (section 44), in the position of a member whom the secretary of his local was obliged to report to the general secretary of the United Brotherhood as a suspended member. While in that status, on July 12th, 1936, he paid to the secretary of his local the sum of $15. This payment, we are told, satisfied all the dues which he owed defendants up to and including June, 1936, but it did not include or satisfy the dues which he then owed for the current month of July, 1936. Having been in arrears for three months at the time he made the payment of $15 on July 12th, 1936, and not having paid his dues for the current month of July, 1936, he was not, under defendants' constitution and by-laws, a member "in good standing." Rather did he continue to stand suspended from all donations until three months after July 12th, 1936, or until October 12th, 1936. (Section 45 and section 49.) Notwithstanding these facts, upon the payment of the $15 a card was issued to John LeoGrande; it was signed by the secretary of the local who, it is agreed, had the authority to issue such cards. This

card is designated as a "quarterly working card" of the Building Trades Department of the American Federation of Labor. It stated that "John LeoGrande is a member in good standing;" and covers the months of July, August and September of 1936, expiring on September 30th, 1936.

John LeoGrande died on September 15th, 1936. Plaintiff, his widow, claimed that her husband was a member in good standing and was, therefore, entitled to "the member's funeral donation" the amount of which is conceded to be $300. Defendants refused to honor the claim. Hence this suit and resultant judgment.

There is nothing in the record to indicate the ground upon which the trial judge determined this cause. The entry in the docket of that court merely states that the "court considered and adjudged" that plaintiff recovered from defendants the sum of $300 and costs. But from the specifications and determinations of the court with which defendants are dissatisfied in point of law and from the briefs of counsel for the respective parties, we gather the position which apparently is and was taken by each of the parties. On the one hand, defendants contend that plaintiff's husband, under the stated provisions of its constitution and by-laws, was "not a member in good standing" although he was "one of its members." On the other hand, plaintiff contends that because her husband held the card stating that he was a member in good standing and because his status, as such a member, did not expire until September 30th, 1936, that defendants' action in thus issuing the card to her husband and in thereafter denying that he was in good standing when he died on September 15th, 1936, was inconsistent. *Ergo,* plaintiff argues defendants "have waived any right to insist upon a forfeiture; and they are estopped from denying that plaintiff's husband was not a member in good standing."

Defendants argue that their position is quite consistent, that the card issued to plaintiff's husband merely entitled him to work as a union artisan until September 30th, 1936, and nothing more; that as the holder of the card he was not entitled to the full benefits of a member in good standing

because he failed to pay the dues which he owed for the current month of July when he paid the $15; and, therefore, he could not again return to the status of a member in good standing entitled to all benefits for himself and for his beneficiaries until three months after the $15 payment, or until October 12th, 1936. The difficulty with that argument is two fold. First, there is nothing in the proofs to support the construction thus placed upon the card in the hands of plaintiff's husband. Second, it begs the question as to whether defendants, under the circumstances exhibited, waived their asserted provisions of their constitution and by-laws. Defendants are not unmindful of the inefficacy of the argument thus made. For they argue that even if there be an inconsistency in their position sufficient to constitute a waiver, it cannot avail plaintiff. In support thereof it is urged that plaintiff's husband was charged with knowledge of the laws of his union; he was charged with the knowledge that its laws concerning membership and benefits could not be altered or amended except at a convention of defendants' delegates and then only in accordance with section 63-C of its constitution; and that, therefore, he knew or should have known that the secretary of his local was without authority to waive defendants' constitution and by-laws. *Cf. Kocher* v. *Supreme Council, &c.,* 65 *N. J. L.* 649; 48 *Atl. Rep.* 544; *Papp* v. *Grand Lodge, &c., United Workmen,* 116 *N. J. L.* 156, 160; 182 *Atl. Rep.* 876.

But here, again, the difficulty is that the proofs do not support the contention. There is not even an intimation, in the proofs, of any culpability on the part of plaintiff's husband in obtaining the card issued to him. And, moreover, section 63-C upon which defendants rely is no part of the record submitted. It is only to be found on the third page of appellants' brief. Thus it is not properly before us. But the record as submitted does set forth the agreed proof that the secretary "had authority to issue such cards and that he did issue this card to John LeoGrande on July 12th, 1936."

Save as to the lack of proof of an inconsistency sufficient to form the basis of a waiver, the case in the Supreme Court of Connecticut in *Cunningham* v. *United Association of*

*Journeymen, &c.* (1932), 158 *Atl. Rep.* 807, is strikingly similar to the case at bar. But in the case at bar we are clearly of the opinion that the proofs amply support the conclusion apparently reached by the trial judge that defendants abandoned or relinquished their known rights in the premises. That is a waiver. *Smith* v. *National Commercial Title, &c., Co.,* 120 *N. J. L.* 75, 83; 198 *Atl. Rep.* 407; *Sullivan* v. *James Leo Co.,* 124 *N. J. Eq.* 317, 325, 1 A-2d, 400. Defendants should not now be permitted to rectify their own grossly negligent mistake, if such, in fact, it was, at the expense of the beneficiary whose husband, without culpability on his part, held defendants' accredited acknowledgment that he was a member in good standing. That, "in short," is the theory of equitable estoppel and available at law. *Central Railroad Co.* v. *MacCartney,* 68 *N. J. L.* 165, 176; 52 *Atl. Rep.* 575. *Cf. Smith* v. *National Commercial Title, &c., supra* (at *p.* 83).

Judgment is affirmed with costs.